United States Court of Appeals,

Fifth Circuit.

No. 96-60676.

Lovett R. WILKERSON, Petitioner,

v.

INGALLS SHIPBUILDING, INC.; Director, Office of Workers'
Compensation Programs, United States Department of Labor,
Respondents.

Oct. 23, 1997.

Petition for Review of a Decision of the Benefits Review Board.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

In 1972, Lovett Wilkerson retired after working fourteen years
at the shipyard of Ingalls Shipbuilding, Inc. ("Ingalls"), in
Pascagoula, Mississippi. The year before he retired, his average
weekly wage was $167.70. In 1992, he underwent tests that revealed
he suffered a permanent hearing loss in both ears, and the parties
agree that he suffered a binaural hearing impairment of 19.23%. It
is undisputed that his hearing loss was a result of the noise to
which he was exposed at Ingalls and thus that the injury occurred
in the course of his employment.

In March 1992, Wilkerson notified Ingalls of his disability
claim under the Longshore and Harbor Workers' Compensation Act
("LHWCA"). It is undisputed that the claim was timely filed.[1]

---

[1]The LHWCA provides that the time for filing a hearing loss
claim does not begin to run "until the employee has received an
audiogram ... which indicates that the employee has suffered a loss

1

Although Ingalls controverted the claim, it nevertheless began compensating Wilkerson, paying him $4,299.83 between April 1992 and May 1993, based on the scheduled compensation under the LHWCA.[2] Despite this payment, Wilkerson pursued his claim before an administrative law judge ("ALJ"). In addition to the $4,299.83, he sought attorneys' fees, penalties, and prejudgment interest from the 1972 date of his injury.[3]

At a hearing before the ALJ, Ingalls argued that it had in fact already overcompensated Wilkerson for his injury. Under the statutory scheme in force at the time of his injury—upon his retirement—it owed only $2,692.20. Ingalls maintains this argument on appeal.

At the time of Wilkerson's retirement, the LHWCA allowed a maximum benefit of only $70 per week: much less than the $111.80 to which Wilkerson would otherwise have been entitled under § 908. After Wilkerson retired but before he filed his claim, Congress amended the LHWCA to provide a much higher maximum benefit, determined yearly by the Department of Labor as a factor of the

---

of hearing."  33 U.S.C. § 908(c)(13)(D).

[2]This figure was based on the fact that Wilkerson's stipulated 19.23% hearing loss entitled him to 38.46 weeks of compensation at a rate equal to two-thirds his average weekly wage of $167.70. *See* 33 U.S.C. § 908(c)(13)(B) (permanent partial binaural hearing loss compensated by 200 weeks' wages, discounted by degree of loss).

[3]A person suffering hearing loss after prolonged exposure to excessive noise is deemed to have been injured on the last day he was exposed.  *Bath Iron Works Corp. v. Office of Workers' Compensation Programs,* 506 U.S. 153, 165, 113 S.Ct. 692, 699-700, 121 L.Ed.2d 619 (1993).  Here, the last exposure was the day of Wilkerson's retirement on October 6, 1972.

national average wage. *See* 33 U.S.C. § 906. Thus, on November 26, 1972, the cap jumped to $167 and has been increasing with inflation ever since.

The ALJ agreed that Ingalls owed only the $70 weekly maximum, and held that because Wilkerson was entitled only to $2,692.20, he must reimburse Ingalls for its overpayment. The ALJ further ruled that Ingalls was not liable for penalties or attorneys' fees. The ALJ's decision was affirmed by the Benefits Review Board ("BRB") by operation of law on September 12, 1996. *See* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, § 101(d), 110 Stat. 1321, 1321-219 (1996).

## II.

The petition for review presents two distinct questions. The first—made apparent by the above recitation of facts—is whether Wilkerson should receive compensation according to the maximum rate in effect at the time of his injury (his retirement), or instead according to the maximum at some later time. This question is easily resolved, as the statute makes plain that compensation is governed by the maximum rate in effect at the time of an award.

The second question—not so straightforward—is from what date, if at all, prejudgment interest ought to be calculated. Particularly in light of the twenty-year lag between Wilkerson's injury and his claim, it matters very much whether interest should be awarded from the date of his injury, the date of his claim, or the date his compensation became due.

We are informed in part by *Strachan Shipping Co. v. Wedemeyer,*

452 F.2d 1225 (5th Cir.1971), which upheld an award of prejudgment interest under the LHWCA, dating from the time compensation becomes due without an award. *Strachan* did not decide whether an award of prejudgment interest under the compensation provisions of the LHWCA might accrue from the time of the injury. For the reasons set forth below, we conclude that it may not.

### III.

We give deference to an ALJ's findings of fact. *Miller v. Central Dispatch Inc.,* 673 F.2d 773 (5th Cir. Unit A 1982). The BRB, however, "is not a policymaking agency; its interpretation of the LHWCA thus is not entitled to any special deference from the courts." *Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 279 n. 18, 101 S.Ct. 509, 515 n. 18, 66 L.Ed.2d 446 (1980); *see McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 456 n. 5 (5th Cir.1982).

### IV.

We begin by noting that on appeal, Ingalls has waived its claim to reimbursement.[4] Wilkerson therefore would keep the $4,299.83, regardless of whether we find that amount was legally due. The amount of compensation originally due is relevant nonetheless, for it constitutes the principal amount on which prejudgment interest, if any, would be due.

The LHWCA, as amended, calls for the Secretary of Labor yearly

---

[4]Ingalls states in its brief: "Solely for purposes of this claim, Employer would be agreeable to an Order of this Court which vacates the [ALJ's] holding that Claimant must reimburse Ingalls the overpayments made."

to calculate the "national average weekly wage" and provides that 200% of this sum be the maximum compensation available under the LHWCA.  33 U.S.C. § 906(b).  The same statutory provision resolves the question before us.  It provides that a given year's maximum compensation "shall apply to employees or survivors ... *newly awarded compensation* during such [year]."  33 U.S.C. § 906(c) (emphasis added).

Wilkerson was "newly awarded compensation" by the ALJ on November 10, 1993.  The maximum weekly compensation available during that year was $738.30.  Wilkerson's scheduled compensation of $111.80 falls well below that maximum.  Therefore, he is entitled to the full amount of scheduled compensation under § 908(c)(13)(B), the amount originally paid by Ingalls:  38.46 weeks at $111.80 per week, or $4,299.83.

We reject Ingalls's objection that the amended act—and the more generous maximum—should not be applied "retroactively."  In addition to the unequivocal statutory imperative here, we note that "application of new statutes passed after the events in suit is unquestionably proper in many situations.  When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 273, 114 S.Ct. 1483, 1501 (1994).

V.

Wilkerson claims prejudgment interest commencing on the date he was injured.  Ingalls maintains that the ALJ was correct in finding that prejudgment interest began to accrue only on the date

5

Wilkerson made his claim known.

The LHWCA does not provide for prejudgment interest. This circuit, however, approved of such awards in *Strachan,* noting that "an employee does not receive full compensation due him where an employer controverts his right unless interest is added to the delayed payments." 452 F.2d at 1229. The question, then, is not whether prejudgment interest is appropriate in LHWCA cases, but from what date it begins to accrue. To our knowledge, no court has directly addressed this issue.

A.

There is a "general rule that prejudgment interest should be awarded in maritime cases, subject to a limited exception for "peculiar' or "exceptional' circumstances." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 195, 115 S.Ct. 2091, 2095, 132 L.Ed.2d 148 (1995), *quoted in Probo II London v. Isla Santay MV,* 92 F.3d 361 (5th Cir.1996). The purpose of prejudgment interest is the basic principle of compensatory damages: that the injured party should be made whole. In the parlance of admiralty courts, "*restitutio in integrum* is the leading maxim applied ... to ascertain damages." *Id.* at 196, 115 S.Ct. at 2096 (collision case). In order to compensate an aggrieved party fully, he must be compensated for the loss of use of the money due as damages.[5]

[5]This is the source of the old, but now little-regarded, rule that prejudgment interest is awarded only on liquidated claims—that is, claims in which the precise amount of damages is ascertainable. Liquidated claims—for example, where contract payments are wrongfully withheld—present the most obvious case in which full compensation must include payment for the time value of the money payable as damages. *See* Michael S. Knoll, *A Primer on Prejudgment*

Recognizing this principle, admiralty courts generally have awarded prejudgment interest accruing from the time the damage was incurred. *See, e.g., In re Oil Spill by Amoco Cadiz,* 954 F.2d 1279, 1335 (7th Cir.1992) (prejudgment interest award of about $128 million).

If Wilkerson's case sounded in negligence against a vessel under 33 U.S.C. § 905(b), the law guiding our decision would be relatively evident. In such cases, the award of prejudgment interest is left essentially to the district court's discretion and is reviewable only for clear error or abuse of discretion. *See, e.g., Koch Refining Co. v. Jennifer L. Boudreaux MV,* 85 F.3d 1178, 1183 (5th Cir.1996). And although it is within a court's discretion to borrow the prejudgment interest law of the state in which it sits, under the exclusivity provisions of the LHWCA it is the federal maritime law that applies. *Webster v. M/V Moolchand,* 730 F.2d 1035, 1040 (5th Cir.1984).

B.

Here, however, Wilkerson sued his employer under the compensation provisions of the LHWCA, 33 U.S.C. § 904. This presents a different circumstance. The amount of a compensation award for permanent partial disability leaves almost no room for discretion. The Act, *id.* § 908(c), spells out detailed payment terms for virtually every conceivable injury. With few

---

*Interest,* 75 TEXAS L.REV. 293, 298 (1996).

exceptions,[6] all that is needed to formulate an award is a determination of the disability, knowledge of the wages of the worker and of the maximum compensation amounts, and a calculator.

The certainty of this scheme is not an accident. In return for a no-fault rule, 33 U.S.C. § 904(b), employers and insurers gain the benefit of relative certainty in their prospective liability, and the system gains from the reduced transaction costs associated with the presumably efficient administration of the scheme.

Working within this framework, and abiding by the text of the statute, we must decline to adopt any rule that would change the amount of statutory compensation. Under the statute, an employee's compensation becomes due, if not controverted, fourteen days after he files notice, even absent an award. 33 U.S.C. § 914(a),(b). The amount of compensation due is explicitly set by statute. *See* 33 U.S.C. § 907. To hold that an employee is entitled to interest dating from the time he is injured would be to alter the amount of compensation he is due under the statute and thus to undermine the will of Congress.

This reasoning is in accord with *Strachan.* There, the Deputy Commissioner sought to award prejudgment interest "from the time payment would have been due, had not the employer controverted the right to compensation." *Id*. at 1226. Nowhere in that opinion, or

---

[6]The most notable exception to this bright-line scheme is § 908(c)(20), which calls for "proper and equitable compensation not to exceed $7,500" for serious disfigurement. Even here, we note that a bright-line maximum is imposed.

8

in any other, was there a hint that prejudgment interest would be appropriate from the time of injury.

Further, a rule that interest may accrue only from fourteen days after the date of the claim not only is necessitated by the terms of the statute, but also is consistent with the overall scheme embodied in it. To allow interest from the time of injury would introduce uncertainty into an otherwise straightforward inquiry. In this case, Ingalls would not have known—and would not have been able to pay immediately—the exact amount due Wilkerson, as the rate, availability, and accrual date of prejudgment interest would almost certainly be the subject of dispute.

Furthermore, the result we reach lends incentives to both employees and employers. One of the reasons we upheld interest awards in *Strachan* was to eliminate the incentive employers otherwise would have to controvert—and thus delay—the payment of meritorious claims. 452 F.2d at 1229-30. This rationale would not be furthered by an award of interest dating from the injury, where no claim has yet been made. On the contrary, such an award would create an incentive for an employee to delay bringing any claim he might have, secure in the knowledge that his employer would deliver a risk-free return on the unpaid claim. For these reasons, then, we decline to extend *Strachan* to allow prejudgment interest under the LHWCA accruing from the date of the injury.

C.

Applying this rule to the present facts, we conclude that Wilkerson is not entitled to prejudgment interest. Although

9

Ingalls controverted Wilkerson's March 12, 1992, claim, it voluntarily began compensating him on April 7, 1992. The first installment would have become due fourteen days after the claim was filed, i.e., on March 28. Because Ingalls began compensating Wilkerson but delivered its first payment late, we must again look to the statute, which provides a remedy for late payments.

The LHWCA provides an exclusive remedy for the late payment of compensation installments by stating that "[i]f any installment of compensation payable without an award is not paid within 14 days after it becomes due ... there shall be added to such installment an amount equal to 10 per centum thereof." 33 U.S.C. § 914(e). The statute thus allows a fourteen-day grace period for compensation payments, after which a substantial penalty is charged. The availability of this statutory remedy precludes the availability of the judge-made remedy of prejudgment interest where installment payments are made, but arrive late. Because Ingalls commenced payment less than fourteen days after March 28 and continued payment in accordance with the statute, it does not owe interest or penalties.

## VI.

The only remaining issue is Wilkerson's request for attorneys' fees. It is now apparent that his attorneys gained him nothing more than the $4,299.83 Ingalls had tendered before he brought the matter before the BRB. He therefore is not entitled to recover attorneys' fees. *See* 33 U.S.C. § 928(b).

## VII.

10

In sum, we conclude that the ALJ erred by reducing Wilkerson's compensation award to reflect the statutory maximum in effect on October 6, 1972, and that Wilkerson is entitled to the $4,299.83 in benefits paid.  He is entitled to neither prejudgment interest nor attorneys' fees.  We GRANT the petition for review, VACATE the decision of the BRB, and REMAND for further proceedings consistent with this opinion.