**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANA ROBERTS,

                *Petitioner,*

        v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; SEA-
LAND SERVICES, INC.,

              *Respondents,*

KEMPER INSURANCE COMPANIES,
    *Real Party in Interest.*

No. 08-70268

OWCP No.
BRB No.
07-0382

OPINION

On Petition for Review of an Order of the
Office of Workers' Compensation Programs

Argued and Submitted
October 7, 2009—Portland, Oregon

Filed November 10, 2010

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Ronald M. Whyte,
Senior District Judge.*

Per Curiam Opinion

---

*The Honorable Senior United States District Judge for the Northern District of California, sitting by designation.

18491

**COUNSEL**

Joshua T. Gillelan II, Longshore Claimants' National Law Center, Washington, DC, argued the cause for the petitioner, and filed the briefs. Michael F. Pozzi, Renton, Washington, was also on the briefs.

Frank B. Hugg, Oakland, California, argued the cause for respondents Sea-Land Services, Inc. and Kemper Insurance Companies, and filed the brief.

Matthew W. Boyle, U.S. Department of Labor, Washington, DC, argued the cause for the Federal Respondent, Director, Officer of Workers' Compensation Programs, and filed the brief. Gregory F. Jacob, Rae Ellen James, and Mark A. Rein-

halter, U.S. Department of Labor, Washington, DC, were also on the brief.

---

## OPINION

PER CURIAM:

We consider the maximum weekly rate that applies to an employee's compensation for disability under the Longshore and Harbor Workers' Compensation Act.

### I

### A

The Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. § 901 *et seq.*, requires employers to compensate maritime employees for "disability or death [that] results from an injury occurring upon the navigable waters of the United States," *id.* § 903(a). Calculating the statutorily required rate of compensation for disability generally involves the following steps. First, we determine the "average weekly wage of the injured employee at the time of the injury." *Id.* § 910. Then, we adjust the employee's average weekly wage to account for both the character (total or partial) and the quality (permanent or temporary) of the injury. *Id.* § 908(a)-(e). As relevant here, the Act entitles an employee to compensation in the amount of two-thirds' his average weekly wage in the case of permanent total or temporary total disability, *id.* § 908(a)-(b), and two-thirds' the difference between his average weekly wage and his residual wage-earning capacity in the typical case of permanent partial or temporary partial disability, *id.* § 908(c)(21), (e).

Finally, we ensure that the resulting rate accords with the requirements set forth in section 6 of the Act. Among other

things, section 6(b)(1) provides that the rate of compensation "shall not exceed an amount equal to 200 per centum of the applicable national average weekly wage, as determined by the Secretary [of Labor]." *Id.* § 906(b)(1). Each fiscal year, the Secretary calculates a new national average weekly wage, which governs "the period beginning with October 1 of that year and ending with September 30 of the next year." *Id.* § 906(b)(3). Under section 6(c), "[d]eterminations [of the national average weekly wage] with respect to a period shall apply to employees . . . currently receiving compensation for permanent total disability . . . during such period, as well as those newly awarded compensation during such period." *Id.* § 906(c).

B

On February 24, 2002, while working as a gatehouse dispatcher in Dutch Harbor, Alaska, for Sea-Land Services, Inc., Dana Roberts slipped on a patch of ice. Having injured his neck and shoulder, Roberts ceased work on March 11, 2002, and sought compensation under the LHWCA.

After initially making some payments to Roberts, Sea-Land and its insurer stopped paying him compensation in May 2005. The matter subsequently came before an administrative law judge ("ALJ"). In a decision issued on October 12, 2006, the ALJ found that Roberts's disability was temporary total from March 11, 2002, to July 11, 2005; permanent total from July 12, 2005, to October 9, 2005; and permanent partial beginning on October 10, 2005. The ALJ calculated Roberts's average weekly wage at the time of injury to be $2,853.08 and his residual wage-earning capacity while partially disabled to be $720.00 per week. Based on these figures alone, Roberts was entitled to weekly compensation in the amount of $1,902.05 during his periods of permanent total and temporary total disability, and $1,422.05 during his period of permanent partial disability. The ALJ concluded, however, that the applicable maximum rate with respect to each of Rob-

erts's periods of disability was $966.08 per week—200% the national average weekly wage for fiscal year 2002, the year Roberts first became disabled. Because the compensation to which Roberts would have otherwise been entitled exceeded the applicable maximum rate, the ALJ ordered Sea-Land and its insurer to pay Roberts $966.08 per week for all periods of disability.

Roberts filed a motion for reconsideration of the ALJ's decision. The ALJ denied the motion but determined that he had applied the wrong maximum rate to Roberts's permanent total disability during the period between October 1, 2005, and October 9, 2005. According to the ALJ, the applicable maximum rate for that period was not $966.08, but rather $1,073.64—200% of the national average weekly wage with respect to fiscal year 2006. The Benefits Review Board affirmed the ALJ's decision and his order denying reconsideration. Roberts timely petitions this court for review.

II

This case presents two questions regarding the interpretation of section 6(c) of the LHWCA. The first concerns when an employee is "newly awarded compensation." According to Roberts, the ALJ erred by holding that he was "newly awarded compensation" in fiscal year 2002, when he first became disabled. Roberts argues that he was not "newly awarded compensation" until fiscal year 2007, when the ALJ issued his decision making a formal award of compensation, and that therefore the ALJ should have used the national average weekly wage with respect to fiscal year 2007 in calculating the maximum rate that governs his compensation for temporary total and permanent partial disability. We disagree.

**[1]** The Act does not expressly define the terms "award" or "awarded." *See* 33 U.S.C. § 902. In *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), however, the Supreme Court held that "[t]he transitive verb "'award'" has a settled meaning in the litiga-

tion context: It means '[t]o give or assign by sentence or judicial determination.' " *Id.* at 2526 (emphasis removed) (quoting *Black's Law Dictionary* 125 (5th ed. 1979)). Consistent with this meaning of the verb, some sections of the LHWCA use the noun "award" to mean a formal compensation order issued in the course of administrative adjudication. *See, e.g.*, 33 U.S.C. § 913(a); *id.* § 914(a); *id.* § 928(a).

**[2]** In other sections, however, the LHWCA uses the terms "award" and "awarded" to refer to an employee's entitlement to compensation under the Act, even in the absence of a formal order. Section 8, for example, defines "awards" for specific types of injuries. *See, e.g.*, *id.* § 908(c)(22) (defining the "award" for loss of certain body parts). Section 8(c)(20) also provides that "[p]roper and equitable compensation not to exceed $7,500 shall be *awarded* for serious disfigurement of the face, head, or neck or of other normally exposed areas likely to handicap the employee in securing or maintaining employment." *Id.* § 908(c)(20) (emphasis added). By use of the term "awarded," Congress could not have meant "assigned by formal order in the course of adjudication," given that employers are obligated to pay such compensation regardless of whether an employee files an administrative claim. Section 908 thus uses the terms "award" and "awarded" to refer to an employee's entitlement to compensation under the Act generally, separate and apart from any formal order of compensation

**[3]** Section 10 similarly uses the term "awarded" to refer to an employee's entitlement to compensation, irrespective of a formal compensation order. Section 10(h)(1) increases the average weekly wage of an employee or survivor who "was *awarded* compensation . . . at less than the maximum rate" for permanent total disability or death occurring prior to October 27, 1972. *Id.* § 910(h)(1) (emphasis added). Given that section 10(h)(1) expressly governs "the compensation to which an employee or his survivor is *entitled* due to total permanent disability or death which commenced or occurred prior to

October 27, 1972," *id.* (emphasis added), Congress apparently used "awarded compensation" and "entitled to compensation" to mean the same thing.

**[4]** Section 6 uses "awarded" in the same context as sections 8 and 10. Like sections 8 and 10, section 6 governs determinations of compensation under the Act. Like sections 8 and 10, moreover, compensation governed by § 906 is due without a formal compensation order. *See id.* §§ 904(a), 914(a). Thus, "awarded" as used in section 6 does not mean "assigned by formal order in the course of adjudication." Consistent with the meaning of "awarded" in sections 8 and 10, "newly awarded compensation" in section 6 means "newly entitled to compensation."

Our interpretation of the phrase finds further support in section 33 of the Act, which states: "For the purpose of this subsection, the term 'award' with respect to a compensation order means a formal order issued by the deputy commissioner, an administrative law judge, or Board." *Id.* § 933(b). Section 33 implicitly contemplates that the meaning of the term "award" in other sections is not limited to a formal compensation order. Unless "award" is used in other sections to mean something broader than a formal compensation order, the specific definition in section 33 would be unnecessary.

**[5]** Moreover, we must read section 6 "with a view to [its] place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted). Our holding that an employee is "newly awarded" compensation when he first becomes disabled accords with the structure of the LHWCA, which identifies the time of injury as the appropriate marker for other calculations relating to compensation. For instance, the Act provides that the employee's average weekly wage—the starting point for determining compensation—is calculated at the time of injury. *See* 33 U.S.C. § 910. The employee's residual wage-earning capacity—used to offset the average weekly

wage in cases of partial disability—is also calculated at the time of injury. *See id.* § 908(c)(21), (e); *Johnston v. Dir., Office of Workers' Comp. Programs*, 280 F.3d 1272, 1277 (9th Cir. 2002). To apply the national average weekly wage with respect to a year other than the year the employee first becomes disabled would be to depart from the Act's pattern of basing calculations on the time of injury.

We are not persuaded by *Wilkerson v. Ingalls Shipbuilding, Inc.*, 125 F.3d 904 (5th Cir. 1997), which holds that an employee is "newly awarded compensation" at the time of a formal compensation order. *Id.* at 906. The Fifth Circuit in *Wilkerson* did not engage in any analysis of the text of the LHWCA. Nor did it explain how its interpretation accords with the overall statutory scheme. Rather, that court resolved the issue summarily without expressing any reasoning. We are not bound by *Wilkerson* and find nothing in the opinion that persuades us to abandon our holding here.[1]

**[6]** We therefore hold that an employee is "newly awarded compensation" within the meaning of section 6(c) when he first becomes entitled to compensation. Because Roberts became newly entitled to compensation in fiscal year 2002, the ALJ properly applied the 2002 fiscal year maximum to Roberts's compensation for temporary total disability and permanent partial disability.

---

[1]We note that Roberts's proposed construction would have the potential for inequitable results: Two claimants injured on the same day could be entitled to different amounts of compensation depending on when their awards are entered. *See Rucker v. Davis*, 237 F.3d 1113, 1119 (9th Cir. 2001) (en banc) ("We will not assume that Congress intended a statute to create odd or absurd results."), *overruled on other grounds by Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 130 (2002). Roberts counters that far from being illogical, such a possibility encourages employers to expedite administrative proceedings rather than delay the process. His argument is undercut by the fact that section 14 of the LHWCA already provides penalties for delay by an employer. *See* 33 U.S.C. § 914(e).

III

We next consider when an employee is "currently receiving compensation for permanent total disability" for purposes of section 6(c). According to Roberts, the ALJ erred by applying the national average weekly wage with respect to fiscal year 2002 in calculating the maximum rate of compensation for his permanent total disability between July 12, 2005, and September 30, 2005. Roberts contends that he could not have been "currently receiving compensation for permanent total disability" until fiscal year 2005 at the earliest, when he began suffering such disability.

**[7]** If Roberts's employer had actually paid him compensation for permanent total disability between July 12, 2005, and September 30, 2005, then the applicable maximum rate would be obvious: Because Roberts would have been "currently receiving compensation for permanent total disability . . . during such period," the applicable maximum rate would be 200% of the determination of the national average weekly wage with respect to that period (*i.e.*, fiscal year 2005). But in fact, Roberts's employer stopped paying him compensation in May 2005, so he did not actually receive any compensation during his period of permanent total disability. The question is whether this means a different maximum rate should apply. We do not believe it does.

**[8]** Employers are obligated to pay compensation due under the Act—including compensation for permanent total disability—regardless of whether an employee files an administrative claim. *See* 33 U.S.C. §§ 904(a), 914(a). By requiring that such compensation "be paid periodically, promptly, and directly to the person entitled thereto," *id.* § 914(a), the Act expects employees entitled to compensation to receive payment during their period of disability. In view of this background expectation, we construe section 6(c)'s reference to the period "during" which an employee is "currently receiving compensation for permanent total disability" to mean the

period during which an employee is *entitled* to receive such compensation, regardless of whether his employer actually pays it. By doing so, we render interpretation of section 6(c)'s "newly awarded" and "currently receiving" clauses consistent: Under both clauses, the inquiry into the applicable maximum rate focuses on an employee's *entitlement* to compensation.

**[9]** In this case, Roberts was entitled to receive compensation for permanent total disability during the period between July 12, 2005, and September 30, 2005. Thus, although his employer did not actually pay him, we hold that he was "currently receiving compensation for permanent total disability . . . during such period." It follows that the applicable maximum rate should be based on the "[d]etermination[ ] [of the national average weekly wage] with respect to [that] period" —namely, the national average weekly wage with respect to fiscal year 2005.[2]

**[10]** We believe the statute is clear: The "currently receiving" clause of section 6(c) unambiguously refers to the period during which an employee was entitled to receive compensation for permanent total disability, regardless of whether his employer actually paid it. Because Roberts was entitled to receive such compensation during the period between July 12, 2005, and September 30, 2005, we hold that the ALJ erred by applying the national average weekly wage with respect to fiscal year 2002, rather than fiscal year 2005, in calculating the applicable maximum rate under section 6(c).

---

[2]It likewise follows that the ALJ properly concluded in denying Roberts's motion for reconsideration that the national average weekly wage with respect to fiscal year 2006 governs his maximum rate of compensation for permanent total disability from October 1, 2005, to October 9, 2005. *See* 33 U.S.C. § 906(b)(3) (directing that the national average weekly wage with respect to each new fiscal year take effect on October 1).

IV

For the foregoing reasons, we **AFFIRM** the Benefits Review Board's order with respect to Roberts's compensation for temporary total disability between March 11, 2002, and July 11, 2005; his compensation for permanent total disability between October 1, 2005, and October 9, 2005; and his compensation for permanent partial disability beginning on October 10, 2005. We **REVERSE** the Board's order with respect to Roberts's compensation for permanent total disability between July 12, 2005, and September 30, 2005, and **REMAND** the case for further proceedings consistent with this opinion.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.

Each party shall bear its own costs.