[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10033
_____

D.C. Docket No. 3:09-cv-00240-HES-JRK

BERNARD D. BOROSKI,

Plaintiff - Appellant,

versus

DYNCORP INTERNATIONAL,
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA/AIG WORLDSOURCE,
DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 30, 2012)

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before PRYOR and EDMONDSON, Circuit Judges, and HOPKINS,[*] District Judge.

HOPKINS, District Judge:

This case is on remand from the Supreme Court for further consideration in light of *Roberts v. Sea-Land Services, Inc.*, ___ U.S. ___, 132 S. Ct. 1350 (2012). The *Roberts* decision conclusively answers one issue in this appeal, and the *Roberts* opinion offers some guidance to answer the other issue.  Accordingly, we affirm the district court.

## I.    BACKGROUND

### A.    The Initial Panel Decision in this Appeal

The facts and procedural history of this appeal are set forth in our earlier opinion, *Boroski v. DynCorp International*, 662 F.3d 1197, 1198–1200 (11th Cir. 2011) (hereinafter *Boroski I*).  We need not recount them here.

Additionally, we need not discuss at length the statutory framework at issue here.  We earlier described the content and structure of the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. §§ 901–950 (2006), as extended by the Defense Base Act, 42 U.S.C.§§ 1651–55 (2006).  *See Boroski*, 662 F.3d at 1200–02.  And, the Supreme Court's opinion in *Roberts* also explains the Act's

---

[*] Honorable Virginia Emerson Hopkins, United States District Judge for the Northern District of Alabama, sitting by designation.

operation. *See Roberts*, 132 S. Ct. at 1354–55. Therefore, we describe the Act only briefly.

The Act provides disability benefits to covered employees, and sets maximum and minimum benefit payments. *See* 33 U.S.C. § 906(b). The amount of these payments are determined in reference to the national average weekly wage. *See id.* The national average weekly wage is calculated after June 1 of each year, and applies to the period from October 1 of that year to September 30 of the next year. *See* 33 U.S.C. § 906(b)(3). Section 906(c) provides that determinations of the national average weekly wage:

> . . . shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.

33 U.S.C. § 906(c) (2006). Thus, the amount of a disabled employee's benefit payment depends on which year's national average weekly wage is used to calculate that payment.

Additionally, for certain disabled employees, the Act provides for annual increases in their benefit payment amounts. *See* 33 U.S.C. § 910(f). For example, Section 910(f) provides that persons who are permanently and totally disabled shall receive a yearly increase in relation to the increase in the national average weekly

3

wage. *Id.* This section caps any increase at five percent. *Id.*

In his initial brief, Boroski made two arguments. First, he contended that the phrase "newly awarded compensation" means the actual entry of a compensation award. *See* Appellant's Br. at 15. Because Boroski's compensation award was entered in 2008 (six years after he became disabled), he contended that the 2008 national average weekly wage should determine the size of his disability benefit payments for each year from 2002 to 2008. Second, Boroski contended that a court would reach the same result under the "currently receiving compensation" clause. Boroski argued that "currently receiving compensation" means the time the compensation is <u>actually</u> received. Boroski did not receive any payments until 2008. Thus, he claimed that the 2008 national average weekly wage should determine the size of his benefit payments under either clause.

In *Boroski I*, we agreed with Boroski's first argument. We followed the Fifth Circuit's decision in *Wilkerson v. Ingalls Shipbuilding, Inc.*, 125 F.3d 904 (5th Cir. 1997), and held that "newly awarded compensation" means the formal entry of a compensation order. *See Boroski*, 662 F.3d at 1208, 1214–15. We noted that the Ninth Circuit reached a different conclusion in *Roberts v. Director, Office of Workers' Compensation Programs*, 625 F.3d 1204, 1208 (9th Cir. 2010) (holding that "newly awarded compensation" means "newly entitled to compensation"), but we

rejected their position.  *See Boroski*, 662 F.3d at 1211–12.

Our decision in *Boroski I* did not address Boroski's second argument, concerning the "currently receiving compensation" clause.

## B.    The Supreme Court's Decision in *Roberts v. Sea-Land Services, Inc.*

After we handed down our opinion in *Boroski I*, but before the mandate issued, Defendants moved to stay.  They explained that the Supreme Court had recently granted certiorari in *Roberts* to address the "newly awarded" clause.  We agreed, and stayed our mandate in *Boroski I* pending the Supreme Court's decision of *Roberts*. *See* Order Staying Mandate, *Boroski v. DynCorp Int'l*, No. 11-10033 (11th Cir. Dec. 14, 2011).  Defendants then filed their own petition for certiorari.

In *Roberts*, the Supreme Court agreed with the Ninth Circuit, and held that "newly awarded compensation" in § 906(c) means newly entitled to compensation. The Court first determined that the phrase "newly awarded compensation" is ambiguous when viewed in isolation.  The Court acknowledged that the plaintiff's (and Boroski's) contention—i.e., "award" means a formal compensation award—is "appealing." *Roberts*, 132 S. Ct. at 1356.  But, the Court also noted that "award" can mean "grant" or "confer or bestow upon." *Id.* (citations omitted).  The Court then examined the whole statute and concluded that "in the context of the [Act's] comprehensive, reticulated regime for worker benefits—in which § 906 plays a

5

pivotal role—'awarded compensation' is much more sensibly interpreted to mean 'statutorily entitled to compensation because of disability.'" *Id.* at 1357.

The Court listed several reasons for its conclusion. First, the Court noted that, if "newly awarded compensation" means a formal compensation order, the Act will not work as Congress intended. According to the Court, the maximum and minimum caps on disability payment amounts in § 906(b) "appl[y] globally, to all disability claims." *Id.* at 1358. However, these caps only work if § 906(c) "applies globally" as well. *Id.* Yet, accepting the plaintiff's (and Boroski's) position on the "newly awarded compensation" clause would make § 906(c) irrelevant in all but a few instances as, in most cases, the employer pays benefits voluntarily and no formal compensation award is ever entered. *Id.* The court expressly rejected as unsound the plaintiff's suggestion that a formal award should issue in every case. *Id.*

Second, the Court said its interpretation furthers the Act's goal of compensating disability, "defined as incapacity because of injury to earn the wages which the employee was receiving *at the time of injury*." *Roberts*, 132 S. Ct. at 1359 (citing 33 U.S.C. § 902(10)) (internal quotation marks omitted). On the other hand, the plaintiff's (and Boroski's) position would treat similarly situated employees differently. *Id.* As the Court noted, "two employees who earn the same salary and suffer the same injury on the same day could be entitled to different rates of

6

compensation based on the happenstance of their obtaining orders in different fiscal years." *Id.*

Third, the Court said its interpretation would discourage gamesmanship. Conversely, the plaintiff's (and Boroski's) position would strongly encourage employees to delay the entry of a formal compensation award to a later year. The court declined to "reward employees with windfalls for initiating unnecessary administrative proceedings, while simultaneously punishing employers who have complied fully with their statutory obligations." *Id.* at 1360.

Finally, the Court expressly rejected the plaintiff's counterargument that "award" in other provisions of the Act means a formal compensation award. The Court acknowledged that it normally presumes that Congress intended identical words to have the same meaning. Still, the Court found the presumption overcome "because several of the provisions of the Act would make no sense if 'award' were read as [the plaintiff] proposes." *Id.*

After deciding *Roberts*, the Supreme Court granted the Defendants' petition for certiorari, vacated *Boroski I*, and remanded for further consideration in light of *Roberts*. *Director, Office of Workers' Compensation Programs, Department of Labor v. Boroski*, 132 S.Ct. 2449 (2012).

## II.    REMAINING ISSUES ON APPEAL AND CONTENTIONS OF THE

PARTIES

In *Roberts*, the Supreme Court conclusively decided the first issue in this appeal.  In fact, Boroski concedes as much.  *See* Supplemental Brief for Petitioner-Appellant at 3.  But, neither this court in *Boroski I* nor the Supreme Court in *Roberts* addressed Boroski's second argument based on the "currently receiving compensation" clause.  Therefore, this issue remains open.

Moreover, this issue is squarely before us.  Even assuming that Boroski's benefits for 2002 are governed by the "newly awarded clause," the amount of Boroski's benefit payments for each year after he became disabled (2003–2007) must be determined under the "currently receiving" clause.  As the Director for the Office of Workers' Compensation Programs explained in his opening brief to this court, "[b]ecause Boroski was being compensated at the maximum rate, his annual benefit increases (for as long as his calculated compensation rate remains above the maximum rate) were the result of section 6(c)'s 'currently receiving' clause rather than [33 U.S.C. § 910(f)]."  Appellee Brief for Director, Office of Workers' Compensation Programs at 18 n.11.

The parties have filed supplemental briefs on this issue. Boroski continues to contend that "currently receiving" means actual physical receipt. He argues that interpreting this phrase to mean "currently entitled to" would do violence to the plain

8

language of the statute.  Supplemental Brief for Petitioner-Appellant at 8.

Furthermore, Boroski contends that § 906(c) creates two different compensation schemes: one for individuals who are totally and permanent disabled and one for all other forms of disability.  The "currently receiving" clause expressly limits itself to those who are totally and permanently disabled.  *See* 33 U.S.C. § 906(c) ("[National average weekly wage determinations] shall apply to employees . . . currently receiving compensation <u>for permanent total disability</u> . . . during such period.") (emphasis added).  Boroski contends, therefore, that the "newly awarded" clause, which is not so limited, does not apply to persons who are totally and permanently disabled.  Because the "newly awarded clause" applies to one group of individuals and the "currently receiving" clause applies to a different group, Boroski argues there is no problem with interpreting the two clauses differently.  In fact, he says the plain language of the statute shows that Congress intended to do just that.  Those who are not totally and permanently disabled will have their benefits determined according to the year they became entitled to them. Conversely, individuals who are totally and permanently disabled should have their benefits determined according to the time they "currently" (meaning actually) receive them.  Additionally, Boroski contends that this interpretation would avoid the disparate treatment concern the Supreme Court identified in *Roberts*.  *See Roberts*,

9

132 S. Ct. at 1359–60.

Defendants respond that "currently receiving compensation," read in context, means currently entitled to compensation. Defendants acknowledge that their position "gives little to the distinction between the words 'awarded' and 'receiving,'" but nonetheless contend their position is more consistent with the Act as a whole. *See* Supplemental Brief of the Director, Office of Workers' Compensation Programs at 37 (hereinafter "Director's Supplemental Br."). Because the arguments of the other defendants largely mirror the arguments of the Director of the Office of Workers' Compensation Programs (the "Director"), all references to the Director's position or interpretation also refer to the position of the other defendants.

## III.    STANDARD OF REVIEW

We review questions of "pure statutory interpretation" de novo. *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006).

## IV.    ANALYSIS

We begin where the Supreme Court began in *Roberts*. We consider whether the phrase "currently receiving compensation" is "plain and unambiguous . . . with regard to the particular dispute in [this] case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 846 (1997). We agree with Boroski that "to receive" usually means "to take in one's hand, or into one's possession. " XIII Oxford English

10

Dictionary 314 (2d ed., 1989); *see also* Merriam-Webster's Collegiate Dictionary 972 (10th ed., 2002) ("to come into possession."). But "to receive" can also mean "to permit onself to be the object of (some action, etc.); to allow (something) to be done to, or (some quality, etc.) to be conferred on, oneself." XIII Oxford English Dictionary 314 (2d ed., 1989) (emphasis added); *see also* Webster's Third New International Dictionary 1894 (2002) ("to be placed under the burden, charge, or constraint of: be made subject to"). This second meaning is similar to the meaning of "award" that the Supreme Court adopted in *Roberts*. Further, we must examine the alternative meanings of "to receive" in the context of the overall statutory scheme. *See Roberts*, 132 S. Ct. at 1357 ("Statutory language . . . cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal quotation marks omitted).

For the following reasons, we hold that "currently receiving compensation" in § 906(c) means "currently entitled to compensation."

### A.    The Director's Position Harmonizes the "Currently Receiving" and "Newly Awarded" Clauses of § 906(c)

Boroski contends that the "currently receiving" and "newly awarded" clauses of § 906(c) create two different compensatory schemes: one focused on actual receipt,

11

and one focused on entitlement.  This argument turns on his assertion that the "newly awarded" clause does not apply to persons with total, permanent disability.  We reject this assertion.

As the Director points out, every person entitled to benefits under the act—including a person who is totally and permanently disabled—is "newly awarded" benefits at some point.  Director's Supplemental Br. at 33.  The "newly awarded" clause does not exclude totally and permanently disabled persons from its reach.  *See* 33 U.S.C. § 906(c) ("Determinations under subsection (b)(3) of this section with respect to a period shall apply to . . . those newly awarded compensation during such period.").  The Supreme Court acknowledged as much in *Roberts* when it said, "the [statutory maximum] cap [in § 906(b)(1)] functions as Congress intended only if § 906(c) applies globally, to all [disability claims]."  *Roberts*, 132 S. Ct. at 1358.  Thus, the "newly awarded" clause applies to Boroski.  Furthermore, it dictates that his benefits for 2002—the year he became entitled to them—be calculated in reference to the 2002 national average weekly wage.  *See Roberts*, 132 S. Ct. at 1363.

Because we reject Boroski's assertion that the "newly awarded" clause does not apply to him, we also reject his argument that § 906(c) creates two different compensatory schemes.  Boroski contends that the "newly awarded" clause focuses on a claimant's entitlement to benefits while the "currently receiving" clause focuses

12

on a claimant's actual receipt of benefits.  This interpretation would create a conflict between the two clauses.  Using this case as an example, Boroski's employer would, following *Roberts*, apply the "newly awarded" clause and calculate Boroski's weekly benefit amount for 2002 using the 2002 national average weekly wage.  Because Boroski is entitled to the maximum rate under § 906(b)(1), his weekly benefit amount for 2002 would be $966.08.  *See* Dep't of Labor, Division of Longshore and Harbor Worker's Compensation (DLHWC), NAWW Information, http://www.dol.gov/owcp/dlhwc/NAWWinfo.htm (last visited on October 22, 2012). If we accepted Boroski's argument, however, the "currently receiving" clause would also apply to him, and his employer would be required to calculate his 2002 weekly benefit payment using the maximum rate for 2008; thus, his weekly benefit amount would be $1,160.36.  *Id.*  As a result, for the year 2002, the two clauses would direct <u>two different and irreconcilable weekly benefit payment amounts</u>.  Further, the Act provides no guidance regarding which amount Boroski's employer should pay. Therefore, adopting Boroski's interpretation would violate the black letter rule of statutory construction that "a court must . . . interpret [a] statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301 (2000) (internal citations and quotation marks omitted).

13

Conversely, the Director's interpretation harmonizes the two clauses.  By interpreting currently receiving" to mean "currently entitled to," the two clauses will result in only one benefit payment amount for a claimant's first year of disability. Because the Director's interpretation avoids the conflict Boroski's interpretation would create, his position is the more sensible one.

**B.    The Director's Position Is More Consistent with § 910(f).**

Section 910(f) provides for annual increases in benefit payments to persons who are totally and permanently disabled.  *See* 33 U.S.C. § 910(f).  These increases are tied to the yearly increase in the national average weekly wage, and capped at five percent.  *Id.*

Under the Director's interpretation, the "currently receiving" clause of § 906(c) produces a similar result as § 910(f).  Each year, a totally and permanently disabled person's benefit payment amount to whom the clause applies will increase at a rate equal to the increase in the national average weekly wage.

The result is also consistent with the Act's goal to compensate disability:  the compensation to be based on an employee's wages "*at the time of injury*."  *See Roberts*, 132 S. Ct. at 1359 (emphasis in original).  A totally and permanently disabled employee receives compensation to replace the wages he was earning <u>at the time he became disabled</u>, and a cost-of-living increase each year thereafter, but no

14

more.

In contrast to the consistency achieved by the Director's interpretation, Boroski's interpretation of § 906(c)'s "currently receiving" clause would produce a result wholly different from § 910(f) and inconsistent with the Act's goal. Rather than gradually increasing benefit payments to maintain the <u>value</u> of an injured employee's wages, determined "at the time of injury," employers who first pay benefits to an injured employee in a year other than the year of injury would pay all past due payments based on the national average weekly wage <u>for the year in which the first payment is made</u>. This calculation would effectively give the injured employee a raise to the later year's national average weekly wage, and would make that raise <u>retroactive to the date of his disability</u>. This result is incongruous with § 910(f), which contemplates a <u>gradual</u> increase in benefit payment amounts for claimants who are totally and permanently disabled. Thus, we believe that the Director's interpretation is the one which is more consistent with the Act's "comprehensive, reticulated regime for worker benefits." *Roberts*, 132 S. Ct. at 1357.

Boroski contends that Congress adopted his interpretation of the "currently receiving" clause to encourage prompt payment of benefits. We disagree. A claimant is clearly entitled to interest on each past due benefit payment. *See Roberts*, 132 S. Ct. at 1363; *see also Matulic v. Director, Office of Workers' Compensation*

15

*Programs*, 154 F.3d 1052, 1059 (9th Cir. 1998) (pre-judgment interest is mandatory); *Sproull v. Director, Office of Workers' Compensation Programs*, 86 F.3d 895, 900 (9th Cir. 1996) (same).  Interest payments adequately compensate an employee for any delay in payment.  *See Roberts*, 132 S. Ct. at 1363 (citing *Sproull*, 86 F.3d at 900).  Additionally, these interest payments should discourage employers from refusing to promptly pay legitimate claims.  Moreover, under Boroski's interpretation, an injured employee whose disability payments begin in a year other than the year of injury would receive <u>both</u> higher benefit payment amounts <u>and</u> interest from the date that each such payment should have been paid.  We see no reason to interpret the Act in such a manner.

### C.    The Director's Position Avoids the Disparate Treatment of Similarly Situated Claimants

Finally, Boroski's interpretation would treat similarly situated employees differently.  Under Boroski's interpretation of the "currently receiving" clause, claimants who receive payment years after they become disabled would receive, in addition to interest, higher benefits for the same period of disability than claimants who timely receive their benefits.  For example, a person who, on the same day as Boroski, suffered the same injury as Boroski, but who received benefit payments beginning in 2002, would receive approximately $30,000 less than Boroski.  *See*

16

Appellant's Br. at 8 n.2.

Of course, Boroski is not similarly situated in one very important respect. He had to wait six years to get paid. But, as noted in the preceding section, Boroski is entitled to interest, which adequately compensates him for his employer's delay. *See Roberts*, 132 S. Ct. at 1363.

Conversely, the Director's position avoids this disparate treatment problem. Under the Director's interpretation, Boroski receives the same benefits as a similarly situated employee who was first injured and who first received payment in 2002, and, additionally, Boroski receives interest on all late payments, to compensate him for the delay.

In *Roberts*, the plaintiff's interpretation of the "newly awarded" clause also created a disparate treatment problem. *See Roberts*, 132 S. Ct. at 1359. In rejecting the plaintiff's interpretation, the Court reasoned that its alternative interpretation avoided any disparate treatment. *Id.* at 1359–60. We do the same in adopting the Director's interpretation of the "currently receiving" clause.

## V.    CONCLUSION

In accordance with Roberts, we hold that "newly awarded compensation" in 33 U.S.C. § 906(c) means "newly entitled to compensation." Further, for the foregoing reasons, we hold that "currently receiving compensation" in 33 U.S.C. § 906(c)

17

means "currently entitled to compensation."  Therefore, the decision of the district court is **AFFIRMED**.