[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2011
JOHN LEY
CLERK

No. 11-10033
_____

D.C. Docket No. 3:09-cv-00240-HES-JRK

BERNARD D. BOROSKI,

                                            Plaintiff - Appellant,

                    versus

DYNCORP INTERNATIONAL,
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA/AIG WORLDSOURCE,
DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

                                            Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 16, 2011)

Before EDMONDSON and PRYOR, Circuit Judges, and HOPKINS,* District Judge.

HOPKINS, District Judge:

This is a case of statutory construction. The question presented by this appeal under the Longshore and Harbor Workers' Compensation Act (the "LHWCA" or the "Act"), as amended, 33 U.S.C. §§ 901-950 (2006), is which date — the date on which disability occurred, or the date on which the injured employee was awarded benefits for such disability — determines the maximum weekly rate of compensation for a permanently totally disabled employee who is "newly awarded compensation." Applying long-standing principles of statutory construction, we find that the maximum weekly rate of compensation is governed by the rate in effect at the time of the award. Therefore, we reverse the decision of the district court and remand for calculation of the sum to be paid.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. Facts

The facts are not in dispute. Bernard Boroski ("Boroski") worked for DynCorp International ("DynCorp"), in Tusla, Bosnia, as a sheet metal mechanic from January 2000 to April 2002. Boroski was exposed to various chemicals

---

* Honorable Virginia Emerson Hopkins, United States District Judge for the Northern District of Alabama, sitting by designation.

during his employment and stopped work on April 20, 2002, after his vision had become severely impaired. Boroski is now legally blind in both eyes and has been permanently and totally disabled since April 20, 2002. DynCorp contested that it was the cause of Boroski's blindness and submitted an application for § 8(f) relief, 33 U.S.C. § 908(f). The parties have not stipulated as to Boroski's wages at the time of the injury, but they agree that his wages were high enough that he would be entitled to the applicable statutory maximum level of compensation.

## B. Procedural History

Boroski timely applied for workers compensation benefits under the LHWCA, which applied to him by operation of the Defense Base Act (the "Base Act"), 42 U.S.C. §§ 1651-55 (2006).

Because DynCorp contested liability, Boroski's claim was adjudicated before an administrative law judge ("ALJ").[1] On February 15, 2008, the ALJ held that Boroski was entitled to compensation for permanent and total disability beginning April 20, 2002 (the "Compensation Order"). He ordered DynCorp "to pay permanent total disability compensation to [Boroski] from April 20, 2002[,] and continuing at the maximum compensation rate." The ALJ did not specify the

---

[1] The Base Act incorporates the LHWCA's claims procedures. 42 U.S.C. § 1651(a); 20 C.F.R. § 704.001.

3

maximum compensation rate that was applicable or calculate the amount owed to Boroski. The ALJ also awarded Boroski interest on all accrued compensation and penalties, computed from the date each payment was originally due.[2]

DynCorp's insurer, Insurance Company of the State of Pennsylvania ("ICSOP"), began to pay compensation to Boroski in 2008, after the Compensation Order was filed. Relying on 33 U.S.C. § 906, ICSOP based its payment of disability benefits for April 20, 2002, through September 30, 2002, on the maximum compensation rate that was in effect for that period, $966.08 per week.[3] Pursuant to 33 U.S.C. § 910(f), ICSOP increased the benefits it paid to Boroski annually beginning October 1, 2002.

Subsequent to the Compensation Order, Boroski applied to the District Director, Office of Workers' Compensation Programs, United States Department of Labor ("District Director") for a supplemental order declaring DynCorp in default. Boroski alleged that DynCorp delayed benefit payments as of June 3,

---

[2]  Because DynCorp timely contested liability, it did not have to begin making payments to Boroski while his claim was being adjudicated. See 33 U.S.C. § 914(b) (providing that the employer must either controvert the claim or commence voluntary payments within fourteen days after notification or knowledge of a claim or of injury or death).

[3]  See Division of Longshore and Harbor Workers' Compensation, U.S. Dep't of Labor, National Average Weekly Wages, Minimum and Maximum Compensation Rates, and Annual October Increases, available at http://www.dol.gov/owcp/dlhwc/nawwinfo.htm (last visited Sept. 23, 2011) (listing $966.08 as maximum compensation rate for period beginning October 1, 2001, and ending September 30, 2002).

2008, and that DynCorp used an inappropriate maximum compensation rate. On September 16, 2008, the District Director stated that DynCorp did not make timely payments from June 3, 2008, to July 8, 2008, but that, on August 6, 2008, DynCorp had "voluntarily," after receipt of a show cause order, paid Boroski the additional compensation due. The District Director found that such August 6, 2008, payment "render[ed] the request for a finding of default moot for such periods." Further, the District Director found that, "[a]s Ordered, compensation is due [Boroski] for permanent total disability benefits from April 20, 2002[,] at the maximum compensation rate, and . . . [that ICSOP] has complied with the Decision and Order paying compensation as it became due." Thus, the District Director implicitly agreed with ICSOP that the maximum compensation rate applicable to Boroski was determined by reference to the date when benefits became payable (April 20, 2002), and not by reference to the date on which benefits were awarded to him (February 15, 2008). The District Director did not explain or discuss why he found such maximum compensation rate appropriate.

Boroski appealed the decision of the District Director to the Benefits Review Board of the United States Department of Labor ("Benefits Review Board"). DynCorp and ICSOP cross-appealed the order of the ALJ that found that Boroski was entitled to benefits. The Benefits Review Board affirmed the

5

decision of the ALJ in part (as to the issue before us) and vacated and remanded in part (as to issues not before us). In accordance with the Benefits Review Board's prior decision in Reposky v. International Transportation Services, 40 Ben. Rev. Bd. Serv. (MB) 65 (2006), the Benefits Review Board affirmed the decision of the District Director, rejecting Boroski's argument that he was entitled to compensation for the years 2002-2008 at the 2008 maximum compensation rate. The Benefits Review Board explained that Reposky held "that the maximum compensation rate for permanent total disability benefits pursuant to [33 U.S.C. § 906(b)(2)] is that in effect at the time benefits commence, subject to subsequent adjustments."

Boroski appealed to the United States District Court for the Middle District of Florida. Applying principles of statutory construction, the district court affirmed the decision of the Benefits Review Board. The district court was persuaded by the decision of the United States Court of Appeals for the Ninth Circuit in Roberts v. Director, Office of Workers' Compensation Programs, 625 F.3d 1204 (9th Cir. 2010), petition for cert. granted sub nom. Roberts v. Sea-Land Services, Inc., 80 U.S.L.W. 3179 (Sept. 27, 2011) (No. 10-1399). The Roberts decision had expressly rejected the holding of the United States Court of Appeals for the Fifth Circuit in Wilkerson v. Ingalls Shipbuilding, Inc., 125 F.3d 904 (5th

6

Cir. 1997). <u>Roberts</u>, 625 F.3d at 1207 ("We are not persuaded by <u>Wilkerson v. Ingalls Shipbuilding, Inc.</u>, 125 F.3d 904 (5th Cir. 1997), which holds that an employee is 'newly awarded compensation' at the time of a formal compensation order.").

Boroski timely filed a notice of appeal. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and § 921(c) of the LHWCA, as incorporated by 42 U.S.C. § 1653.

## II. STATUTORY BACKGROUND

In 1927, Congress enacted the LHWCA to provide a workers compensation system for covered workers. <u>Ne. Marine Terminal Co. v. Caputo</u>, 432 U.S. 249, 257-58, 97 S. Ct. 2348, 2354, 53 L. Ed. 2d 320, 329 (1977) ("[C]onvinced that the only way to provide workmen's compensation for longshoremen and harborworkers injured on navigable waters was to enact a federal system, Congress, in 1927, passed the LHWCA.").

The LHWCA originally specified a specific dollar limit as the maximum compensation that a disabled worker could receive; Congress increased these limits in 1948, 1956, and 1961. From 1962 to 1972, maximum compensation was limited to $70 per week. Historical and Statutory Notes, 33 U.S.C.A. § 906 (West 2011).

In 1972, Congress comprehensively revised the LHWCA to accommodate the competing interests of shipowners, maritime employers, and maritime employees. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub. L. No. 92-576, 86 Stat. 1251, 1251-65. "The [1972] amendments: a) increased benefit amounts for longshoremen, b) eliminated the vessel owner's liability to longshoremen for unseaworthiness, and c) eliminated the vessel owner's indemnity action against the stevedore based on breach of an implied warranty of workmanlike service." Joel K. Goldstein, Wrongful Death: Negligence Remedy Available to Estate of Longshoreman., 32 J. Mar. L. & Com. 175, 182 (2001) (reviewing Garris v. Norfolk Shipbuilding & Drydock Corp., 210 F.3d 209 (4th Cir. 2000)); see also Caputo, 432 U.S. at 261-62, 97 S. Ct. at 2356, 53 L. Ed. 2d at 332 (recognizing that in the 1972 amendments, Congress "specifically eliminat[ed] suits against vessels brought for injuries to longshoremen under the doctrine of seaworthiness and outlaw[ed] indemnification actions and 'hold harmless' or indemnity agreements; continu[ed] to allow suits against vessels or other third parties for negligence; and rais[ed] benefits to a level commensurate with present day salaries and with the needs of injured workers whose sole support will be payments under the Act") (internal quotation marks and parenthesis omitted).

8

As to § 906, the 1972 amendments, <u>inter alia</u>, "added subsec[tions] (b) to (d) and struck . . . former subsec[tion] (b) compensation . . . which prescribed a $70 per week" maximum compensation for all disabilities, and the lower of $18 per week or the employee's average weekly wages, as computed under § 910, for employees who were totally disabled. Historical and Statutory Notes, 33 U.S.C.A. § 906 (West 2011). As amended in 1972, subsection (b)(1) set out a schedule of progressive percentages for the years 1973 through 1975. Pub. L. No. 92-576, 86 Stat. at 1252 § 5. Subsections (b)(2) and (3) are set out in the current version of the LHWCA, except that subsection (b)(2) now reads "under paragraph 3." 33 U.S.C. § 906(b)(2)-(3).

Subsection (d) (now (c)), added to § 906 in 1972, governs the application of the annually determined national average weekly wage. 33 U.S.C. § 906(c). This subsection states that the maximum and minimum rate of compensation "with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period." 33 U.S.C. § 906(c).

As part of the same legislation, Congress also added § 910(f). Pub. L. No. 92-576, 86 Stat. at 1258 § 11. Specifically, Congress added language that

provided that compensation paid "for permanent total disability or death . . . shall be increased" each year by the same percentage that the national average weekly wage increased over the past year. Id. (codified at 33 U.S.C. § 910(f)).[4]

In 1984, Congress again amended the LHWCA. See generally Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, 98 Stat. 1639, 1639-55. It substituted the current subsection 906(b)(1) maximum, struck subsection (c) and redesignated subsection (d) as subsection (c), and amended susbsection (b)(2) by substituting "under subsection (b)(3) of this section" for "under this subsection." Historical and Statutory Notes, 33 U.S.C.A. § 906 (West 2011).

As to § 910(f), Congress, as part of the same legislation, "substituted 'subject to this chapter' for 'sustained after October 27, 1972,' and inserted 'the lesser of —' following 'by' in the introductory language, designated the balance of the existing provisions as par. (1), substituted '; or' for a period at the end of par. (1) as so designated, and added par. (2)." Historical and Statutory Notes, 33 U.S.C.A. § 910 (West 2011).

---

[4] Section 910 further provides that compensation shall not be reduced as a result of these annual adjustments. 33 U.S.C. § 910(g).

Thus, after the 1972 and 1984 amendments, compensation for various injuries generally is based on a worker's average weekly wage at the onset of disability, with annual adjustments to increase that compensation, unless otherwise provided by the Act. See 33 U.S.C. § 910 ("Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation . . . ."). Sections 908 and 906(b) "otherwise provide" in this instance, as explained below.

Section 908 provides that a worker who is totally disabled is entitled to receive two-thirds of the average weekly wage he earned prior to his injury, which may be permanent. 33 U.S.C. § 908(a)-(b). A worker who is permanently but only partially disabled is entitled to two-thirds of his pre-injury average weekly wage for a fixed period of weeks, with the number of weeks based on the type of injury or the part of his body injured. 33 U.S.C. § 908(c)(1)-(20). If a worker is permanently and partially disabled but his injury is not one of those listed in subsections 908(c)(1)-(20), he is entitled to two-thirds of the difference between his pre-injury average weekly wage and his "wage earning capacity" thereafter. 33 U.S.C. § 908(c)(21).

However, under subsection 906(b), these benefits are subject to minimum and maximum limits based upon a percentage of the annually-adjusted average national weekly wage:[5]

**(b) Maximum rate of compensation**

(1) Compensation for disability or death (other than compensation for death required by this chapter to be paid in a lump sum) shall not exceed an amount equal to 200 per centum of the applicable national average weekly wage, as determined by the Secretary under paragraph (3).

(2) Compensation for total disability shall not be less than 50 per centum of the applicable national average weekly wage determined by the Secretary under paragraph (3), except that if the employee's average weekly wages as computed under section 910 of this title are less than 50 per centum of such national average weekly wage, he shall receive his average weekly wages as compensation for total disability.

(3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. The initial determination under this paragraph shall be made as soon as practicable after October 27, 1972.

33 U.S.C. § 906(b).

---

[5] The minimum limits prescribed in the LHWCA expressly are not applicable to claims by workers covered by the DBA rather than the Act itself, such as Boroski. 42 U.S.C. § 1652(a).

Further, subsection 906(c) sets out how determinations under subsection 906(b)(3) are to be applied:

**(c) Applicability of determinations**

Determinations under subsection (b)(3) of this section with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.

33 U.S.C. § 906(c).

Thus, pursuant to subsection 906(b)(1), all permanently totally disabled workers, such as Boroski, are subject to an annually-adjusted statutory maximum rate of compensation, that is, "an amount not to exceed 200 per centum of the applicable national average weekly wage as determined by the Secretary under paragraph (3)." 33 U.S.C. § 906(b)(1).

## III. STANDARD OF REVIEW

This Court reviews "a question of pure statutory interpretation" by a district court on a de novo basis. Burlison v. McDonald's Corp., 455 F.3d 1242, 1245 (11th Cir. 2006); see also Williams v. Homestake Mortg. Co., 968 F.2d 1137, 1139 (11th Cir. 1992) ("We note at the outset that a district court's rulings 'on the interpretation and application of [a] statute are conclusions of law subject to

13

de novo review.'") (quoting Young v. Comm'r, 926 F.2d 1083, 1089 (11th Cir.

1991)).

We review de novo both decisions of the Benefits Review Board, U.S. Steel

Mining Co. v. Dir., Office of Workers' Comp. Programs, 386 F.3d 977, 984 (11th

Cir. 2004), and supplemental orders issued by district directors under 33 U.S.C. §

918(a), Pleasant-El v. Oil Recovery Co., 148 F.3d 1300, 1301 (11th Cir. 1998).

As this Court has explained the standard applicable to appellate review under the

LHWCA:

> We review the Board's decisions to determine whether the
> Board has adhered to its statutory standard of review and whether it
> has erred in interpreting the law. Argonaut Ins. Co. v. Patterson, 846
> F.2d 715, 718 (11th Cir. 1988). This court, and the Board, must
> uphold the factual determinations of the ALJ if they are supported by
> substantial evidence in the record as a whole, Lollar v. Alabama
> By-Products Corp., 893 F.2d 1258, 1261 (11th Cir. 1990).
> Substantial evidence is "such relevant evidence as a reasonable mind
> might accept as adequate to support a conclusion." Id. at 1262
> (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,
> 1427, 28 L. Ed. 2d 842 (1971)). Because the Board is essentially an
> adjudicator, rather than an administrator, its interpretations are
> entitled to no special deference. See Potomac Elec. Power Co. v.
> Director, Office of Workers' Comp. Programs, 449 U.S. 268, 278
> n.18, 101 S. Ct. 509, 514-15 n.18, 66 L. Ed. 2d 446 (1980);
> William[s] Bros. v. Pate, 833 F.2d 261, 264 (11th Cir. 1987). We owe
> deference to official expressions of policy by the Director, who does
> administer the statute, Lollar v. Alabama By-Products Corp., 893
> F.2d 1258, 1262 [. . .], but settled law precludes us from affording
> deference to an agency's litigating position. McKee v. Sullivan, 903

F.2d 1436, 1438 n.8 (11th Cir. 1990); William[s] Bros., 833 F.2d at 265.

Ala. Dry Dock and Shipbuilding Corp. v. Sowell, 933 F.2d 1561, 1563 (11th Cir. 1991), abrogated on other grounds by Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs, 506 U.S. 153, 162-63, 113 S. Ct. 692, 698, 121 L. Ed. 2d 619, 630-31 (1993); accord Equitable Equip. Co. v. Dir., Office of Workers' Comp. Programs, 191 F.3d 630, 631 (5th Cir. 1999) ("This court reviews the [Benefit Review Board]'s interpretation of the LHWCA, an issue of law, de novo, affording no special deference to the [Benefit Review Board]'s construction because it is not a policymaking agency.").

The Director of the Office of Workers' Compensation Programs has expressed his position in a brief to us, and the District Director took the same position in his compensation orders. The parties agree that this interpretation is entitled to deference under Skidmore v. Swift & Co. 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124, 129 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). We agree.

15

"Under Skidmore, an agency's interpretation may merit some deference depending upon the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Buckner v. Fla. Habilitation Network, Inc., 489 F.3d 1151, 1155 (11th Cir. 2007) (quoting Skidmore, 323 U.S. at 140, 65 S. Ct. at 164, 89 L. Ed. at 129).

While this Court has previously held that the "mere litigating position" of the Director is not entitled to "deference," Williams Bros. v. Pate, 833 F.2d 261, 265 (11th Cir. 1987) ("[W]e do not agree that the Director's mere litigating position is due to be given deference."), that decision does not preclude application of Skidmore deference, which is the deference we give to any non-binding agency authority that is nonetheless persuasive.[6] Unlike the administrator in Williams Bros., the Director is not articulating a "novel position," 833 F.2d at 265, or a post hoc rationalization of a past decision. Cf. Auer v. Robbins, 519

---

[6] This Court has explained in dicta that the Director's interpretations of statutes in legal briefs are "entitled to only Skidmore deference." See Pittsburg & Midway Coal Mining Co. v. Dir., Office of Workers' Comp. Programs, 508 F.3d 975 (11th Cir. 2007); Wilderness Watch v. Mainella, 375 F.3d 1085, 1091 n.7 (11th Cir. 2004); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 136, 117 S. Ct. 1953, 1962, 138 L.Ed.2d 327, 342 (1997) ("[T]he Director's reasonable interpretation of the Act brings at least some added persuasive force to our conclusion . . . ."(citing Skidmore, 323 U.S. at 140, 65 S. Ct. at 164)). But see Bianco v. Ga. Pac. Corp., 304 F.3d 1053, 1056 n.3 (11th Cir. 2002) (refusing to give deference to litigating position of the Director).

16

U.S. 452, 462, 117 S. Ct. 905, 912 137 L. Ed. 2d 79 (1997) ("The Secretary's position is in no sense a 'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack . . . .") (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212, 109 S. Ct. 468, 474, 102 L. Ed. 2d 493 (1988)). The Director has taken his position in the past. See, e.g., Roberts, 625 F.3d at 1206 (summarizing issues on appeal); Reposky, 40 Ben. Rev. Bd. Serv. (MB) 65; cf. Puccetti v. Ceres Gulf, 24 Ben. Rev. Bd. Serv. (MB) 25, 31 (1990) ("[D]uring a yearly period when a given national average weekly wage is in effect, those 'currently receiving' benefits for permanent total disability or death are entitled to that year's new maximum, as are those 'newly awarded' compensation during that period.").

Therefore, because the nature of this particular LHWCA appeal "presents questions of law only," we engage in a de novo examination. Pleasant-El, 148 F.3d at 1301 (reviewing de novo district court's decision regarding meaning of ten days, i.e., calendar days or business days, under § 914(f) of LHWCA). Further, we have accorded Skidmore deference to the Director's position.[7]

---

[7] It is worth noting here that the Ninth Circuit still extends deference under Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), to the Director's litigating positions interpreting the LHWCA. See Price v. Stevedoring Servs. of Am., Inc., 627 F.3d 1145 (9th Cir. 2011) (O'Scannlain, J., concurring specially), rehearing en banc granted, No. 08–71719, 2011 WL 3251481, at *1 (Aug. 1, 2011). We agree with Judge O'Scannlain that such deference is ill-founded and indeed "conflicts with the Supreme Court's

## IV. ANALYSIS

Boroski argues, as he did before the district court and the Benefits Review Board, that the plain language of 33 U.S.C. § 906(c), as applied to permanently totally disabled claimants, such as himself, two-thirds of whose pre-disability average weekly wage exceeds the maximum compensation set out in § 906(b)(1), and who are "newly awarded compensation" for such disability, unambiguously provides that the applicable maximum compensation for such worker is 200 percent of the national average weekly wage in effect at the time of the award,[8] adjusted each October 1 thereafter. DynCorp, joined by its insurer, ICSOP, and the Director, argue that it is the date of onset of the disability, and not the date on which a permanently totally disabled worker is awarded compensation, that determines the worker's applicable maximum compensation, adjusted annually thereafter.

### A. Rules of Statutory Construction

decision in United States v. Mead Corp., 533 U.S. 218, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)." Price, 627 F.3d at 1150. Neither this Court nor the Fifth Circuit accords Chevron deference to the Director's litigating positions interpreting the LHWCA. This fundamental difference in approach may explain in part the divergence of opinions between the Fifth and Ninth Circuits on the issue currently before us.

[8] The LHWCA provides for payment of compensation without an award where liability is not controverted by the employer. 33 U.S.C. § 914(a).

18

"As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S. Ct. 755, 760, 142 L. Ed. 2d 881, 891-92 (1999) (citation omitted). Additionally, "[a]ny ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.'" CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1225 (11th Cir. 2001).

Thus, in interpreting § 906(c),"[o]ur 'starting point' is the language of the statute itself:"

> We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions. We do not look at one word or term in isolation, but instead we look to the entire statutory context. We will only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent.

Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1212-13 (11th Cir. 2010) (second alternation in original) (citations omitted) (quoting United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999)). Further, this Court has

19

clarified the relationship between the plain meaning rule and other canons of construction as follows:

> On occasion, this Court has referred to the plain meaning rule itself as a one of the canons of construction. See, e.g., Merritt v. Dillard Paper Co., 120 F.3d 1181, 1185-86 (11th Cir. 1997). While this may be true, we believe that the clear language of a statutory provision holds a status above that of any other canon of construction, and often vitiates the need to consider any of the other canons. Therefore, if the plain meaning rule is a canon of construction, it is the largest caliber canon of them all.

CBS, 245 F.3d at 1225 n.6.

> *B. The Plain Language of the Statute Establishes that Boroski Is Entitled to Compensation at the Maximum Rate in Effect at the Time of the Administrative Award.*

Under the LHWCA, the compensation to which an injured covered worker is entitled generally is determined by reference to his or her average weekly wage at the time of the injury. 33 U.S.C. § 910. Further, the average weekly wage of an employee is 1/52 of his or her average annual earnings. 33 U.S.C. § 910(d).

Section 908 sets out a schedule for compensation for specified injuries. Where the disability is both permanent and total, § 908(a) provides:

> (a) Permanent total disability: In case of total disability adjudged to be permanent[,] 66 2/3 per centum of the [disabled employee's] average weekly wages shall be paid to the employee during the continuance of such total disability. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary,

20

constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts.

33 U.S.C. § 908(a).

Section 906(a) sets out when compensation is <u>allowed</u> to commence:[9]

**(a) Time for commencement**

No compensation shall be allowed for the first three days of the disability, except the benefits provided for in section 907 of this title: *Provided, however,* That in case the injury results in disability of more than fourteen days the compensation shall be allowed from the date of the disability.

33 U.S.C. § 906(a).[10]

However, § 906(b)(1) "caps" the compensation paid.  This "cap" applies only when the injured worker's compensation, as computed under § 908, exceeds

---

[9]  If liability is controverted, as in this case, compensation is not <u>required</u> to commence unless and until compensation is awarded (by a compensation order), although the employer may voluntarily advance payments to the worker while the claim is pending.  <u>See</u> 33 U.S.C. § 914(a) ("Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer."); <u>id.</u> § 914(b), (f) (describing installment payments and penalties for late payments under the Act); <u>id.</u> § 914(j) ("If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due."); <u>id.</u> § 921(a) ("A compensation order shall become effective when filed in the office of the deputy commissioner . . . ."); <u>see also Carillo v. La. Ins. Guar. Ass'n</u>, 559 F.3d 377, 382 (5th Cir. 2009) (holding that compensation becomes "due" so as to trigger the measuring date applicable to penalties for late payment when "the initial acts by the District Director [<u>awarding</u> the compensation] have occurred-such as the formal dating of the order and its filing in the office").

[10]  Section 907 deals with medical services and supplies.

"200 per centum of the applicable national average weekly wage, as determined by the Secretary under [§ 906(b)(3)]." 33 U.S.C. § 906(b)(1).

Section 906(b)(3) requires the Secretary to determine the national average weekly wage annually:

> (3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year.

33 U.S.C. § 906(b)(3).

Section 906(c) mandates when the annually determined national average weekly wage "shall apply."

> **(c) Applicability of determinations**
>
> Determinations under subsection (b)(3) of this section with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.

33 U.S.C. § 906(c).

Boroski was "newly awarded compensation" at the time of the ALJ's award and was not receiving voluntary compensation. Thus, under a plain reading of the statute, we agree that the maximum compensation rate applicable to Boroski must

22

be determined by reference to the national average weekly rate applicable to "such period" on which he received his award, that is, February 15, 2008.

We are aware that the Fifth Circuit has decided this issue in a manner consistent with the result urged by Boroski, but that the Ninth Circuit and the Benefits Review Board have reached a contrary result. An analysis of these cases explicates that the result reached by the Fifth Circuit is correct.

### 1. The Fifth Circuit's Wilkerson Decision

The Fifth Circuit interpreted § 906(c) in Wilkerson, 125 F.3d 904. Wilkerson involved a claim brought in 1992 for a permanent partial disability (bilateral partial hearing loss) suffered prior to enactment of the 1972 amendments to the LHWCA. As the Fifth Circuit explained, "[a] person suffering hearing loss after prolonged exposure to excessive noise is deemed to have been injured on the last day he was exposed. Here, the last exposure was the day of Wilkerson's retirement on October 6, 1972." 125 F.3d at 905 n.3 (citation omitted). The employer began making payments to the claimant in 1992, within 14 days of the claim, although the parties disputed the maximum compensation rate that applied. The court framed the facts and procedural posture as follows:

> At the time of Wilkerson's retirement [and thus the time of his injury], the LHWCA allowed a maximum benefit of only $70 per week: much less than the $111.80 to which Wilkerson would

otherwise have been entitled under § 908.  After Wilkerson retired but before he filed his claim, Congress amended the LHWCA to provide a much higher maximum benefit, determined yearly by the Department of Labor as a factor of the national average wage.  See 33 U.S.C. § 906.  Thus, on November 26, 1972, the cap jumped to $167 and has been increasing with inflation ever since.

Wilkerson, 125 F.3d at 905.

The Fifth Circuit set out the relevant issue as follows:

The petition for review presents two distinct questions. The first-made apparent by the above recitation of facts-is whether Wilkerson should receive compensation according to the maximum rate in effect at the time of his injury (his retirement), or instead according to the maximum at some later time. This question is easily resolved, as the statute makes plain that compensation is governed by the maximum rate in effect at the time of an award.

Id. at 906.

Our sister circuit then held:

The LHWCA, as amended, calls for the Secretary of Labor yearly to calculate the "national average weekly wage" and provides that 200% of this sum be the maximum compensation available under the LHWCA.  33 U.S.C. § 906(b).  The same statutory provision resolves the question before us.  It provides that a given year's maximum compensation "shall apply to employees or survivors . . . newly awarded compensation during such [year].  33 U.S.C. § 906(c) (emphasis added).

Wilkerson was "newly awarded compensation" by the ALJ on November 10, 1993. The maximum weekly compensation available during that year was $738.30. Wilkerson's scheduled compensation of $111.80 falls well below that maximum. Therefore, he is entitled to the full amount of scheduled compensation under § 908(c)(13)(B), the

amount originally paid by Ingalls:  38.46 weeks at $111.80 per week, or $4,299.83.

Id.  Thus, the Fifth Circuit not only held that the 1972 weekly maximum rate of $70, which was in effect at the date of Wilkerson's retirement (and therefore of his injury) did not apply, but that the maximum in effect on the date Wilkerson was "newly awarded benefits" — November 10, 1993 — did apply to determine his compensation due:  $110.80 per week.

In his brief to us, the Director scarcely mentions Wilkerson, other than to say that the district court rejected Boroski's reliance on it and to quote the Ninth Circuit's opinion finding it unpersuasive because "[t]he Wilkerson court] . . . did not engage in any analysis . . . [but rather] resolved the issue summarily without expressing any reasoning," Roberts, 625 F.3d at 1207.  DynCorp and ICSOP say even less about Wilkerson, only quoting the same section of Roberts quoted by the Director and criticizing Boroski's "fail[ure] to recognize that such a narrow reading of section 6(c) is inconsistent with the overall process of determining benefits under the Act, and would breed conflicting results among the claimant population."  However, when the language of the statute itself is clear, "assum[ing] that Congress used the words in . . . [it] as they are commonly and ordinarily understood, and . . . read[ing] the statute to give full effect to each of its

provisions[,] . . . look[ing] to the entire statutory context[,]" <u>Harrison</u>, 593 F.3d at 1212 (internal quotation marks omitted) (citations omitted) (quoting <u>DBB</u>, 180 F.3d at 1281), the analysis is complete.

As explained below, having performed this complete analysis, we agree with <u>Wilkerson</u>.

## 2. The Board's <u>Reposky</u> Decision

In <u>Reposky</u>, the Benefits Review Board pointed out that <u>Wilkerson</u> was a Fifth Circuit case, and therefore not binding on it outside the Fifth Circuit. 40 Ben. Rev. Bd. Serv. 65. It then distinguished <u>Wilkerson</u>, stating that the <u>Wilkerson</u> court did not have before it the issue of statutory interpretation of § 609(c), and therefore the decision was also not persuasive as to that issue. <u>Id.</u> at 75 ("Thus, in <u>Wilkerson</u>, claimant's award was entered after the effective date of the 1972 Amendments and the prior maximum compensation rate thus was not applicable as a matter of law."); <u>id.</u> ("There was no issue regarding the statutory interpretation of Section 6(c) before the court."); <u>id.</u> ("Under these circumstances, the single sentence in <u>Wilkerson</u> is not persuasive authority for overruling <u>Puccetti</u>.").[11]

---

[11] This reading of <u>Wilkerson</u> is flatly contradicted by the Fifth Circuit's holding.

26

In Reposky, the Benefits Review Board relied on its prior decisions in Puccetti, 24 Ben. Rev. Bd. Serv. (MB) 25, and Kubin v. Pro-Football, Inc., 29 Ben. Rev. Bd. Serv. (MB) 117 (1995), for its holding that, pursuant to § 906(c), the applicable maximum compensation rate is the one in effect when the disability commences. See Reposky, 40 Ben. Rev. Bd. Serv. at 75 ("Both cases hold that the applicable maximum rate is the one in effect when the disability commences."); id. ("In Puccetti, the Board commented that this generally is when the injury occurs, but these cases, as well as the legislative history, provide that the applicable maximum rate is determined by the date benefits commence.") (some emphasis added).

Reposky involved a claimant who suffered an injury in 1995 that caused a temporary total disability. 40 Ben. Rev. Bd. Serv. at 66. The employer began voluntary payment of compensation in 1995, id. at 66, but a compensation award was not entered until 2005, id. at 74. The Benefits Review Board held that the claimant was subject to the compensation limit in effect in 1995 and 1996 for Reposky's temporary total disability. See id. at 76 ("We affirm the administrative law judge's finding that claimant's temporary total disability awards are subject to the maximum rates in effect in 1995 and 1996."). As made clear below, the

Benefits Review Board's reliance in Reposky on its prior holding in Puccetti is misplaced.

Specifically, Puccetti held that § 906(c) mandates that the national average weekly wage that is determined annually each October 1 pursuant to § 906(b)(3) applies, as to the maximum rate of compensation for any particular disability claimant, as of the date that compensation is "newly awarded." Puccetti, 24 Ben. Rev. Bd. Serv. at 31 ("Acceptance of the Director's position requires that we ignore the plain language of Section 6(c) which differentiates between those 'currently receiving compensation for permanent total disability or death benefits' during a period and those 'newly awarded compensation' during the period.").

Further, the Benefits Review Board's passing reference in Reposky to Kubin, is unhelpful. In Kubin, although the Benefits Review Board affirmed the ALJ's decision to base the claimant's applicable maximum compensation under § 906(c) on the date the "award commenced," that is, August 1, 1986, the day after the claimant was forced by his disability to retire (because the disability was latent until then), and rejected the employer's argument that such maximum compensation should have been based on the claimant's earlier injury date, there was no argument that the date of the award itself should not have been the controlling date. See Kubin, 29 Ben. Rev. Bd. Serv. at 122 ("[W]e disagree with

28

[the] employer that the applicable rate is that in effect at the time of claimant's October 14, 1981, injury."). Indeed, the claimant urged affirmance of the award. Thus, the issue that is before us (and the same issue that was before our sister circuits in <u>Wilkerson</u> and in <u>Roberts</u>) was not before the Benefits Review Board in <u>Kubin</u>. Finally, <u>Reposky</u> reads § 906(b)(1) in the abstract, without reference to § 906(c) and its limiting effects on § 906(b)(1). In sum, we find <u>Reposky</u> unpersuasive.

### 3. The Ninth Circuit's <u>Roberts</u> Decision

We also disagree with the holding of the Ninth Circuit Court of Appeals as set out in <u>Roberts</u>.[12] The facts and procedural posture of <u>Roberts</u> are copied here from the Ninth Circuit's opinion.

> On February 24, 2002, while working as a gatehouse dispatcher in Dutch Harbor, Alaska, for Sea-Land Services, Inc., Dana Roberts slipped on a patch of ice. Having injured his neck and shoulder,

---

[12] This opinion is binding authority in the Ninth Circuit and has been followed in <u>Price</u>. 627 F.3d at 1148 ("As explained in our recent opinion in <u>Roberts v. Director, OWCP</u>, 33 U.S.C. § 906(b) and (c) require us to apply the maximum compensation rate from the fiscal year in which the individual becomes entitled to compensation (<u>i.e.</u>, the date of injury), not the rate in place for the fiscal year when the ALJ issues a formal compensation award. Therefore, the Board and the ALJ did not err by capping Price's compensation by the fiscal year 1991 rate."). However, Judge O'Scannlain, who participated in both <u>Roberts</u> and <u>Price</u>, wrote a concurring opinion in <u>Price</u> in which he criticized the Ninth Circuit's continued <u>Chevron</u> deference to the Director's litigating position, <u>Price</u>, 627 F.3d at 1150-51, and "respectfully suggest[ed] that the time is ripe for [the Ninth Circuit] to revisit our circuit's law governing the deference we owe the Director's litigating positions." <u>Id.</u> at 1151. Additionally, after oral argument was held in this case, the Ninth Circuit ordered that <u>Price</u> be reheard en banc. <u>Price v. Stevedoring Servs. of Am.</u>, — F.3d —, 2011 WL 3251481 (9th Cir. Aug. 1, 2011).

29

Roberts ceased work on March 11, 2002, and sought compensation under the LHWCA.

After initially making some payments to Roberts, Sea-Land and its insurer stopped paying him compensation in May 2005. The matter subsequently came before an administrative law judge ("ALJ"). In a decision issued on October 12, 2006, the ALJ found that Roberts's disability was temporary total from March 11, 2002, to July 11, 2005; permanent total from July 12, 2005, to October 9, 2005; and permanent partial beginning on October 10, 2005. The ALJ calculated Roberts's average weekly wage at the time of injury to be $2,853.08 and his residual wage-earning capacity while partially disabled to be $720.00 per week. Based on these figures alone, Roberts was entitled to weekly compensation in the amount of $1,902.05 during his periods of permanent total and temporary total disability, and $1,422.05 during his period of permanent partial disability. The ALJ concluded, however, that the applicable maximum rate with respect to each of Roberts's periods of disability was $966.08 per week-200% the national average weekly wage for fiscal year 2002, the year Roberts first became disabled. Because the compensation to which Roberts would have otherwise been entitled exceeded the applicable maximum rate, the ALJ ordered Sea-Land and its insurer to pay Roberts $966.08 per week for all periods of disability.

Roberts filed a motion for reconsideration of the ALJ's decision. The ALJ denied the motion but determined that he had applied the wrong maximum rate to Roberts's permanent total disability during the period between October 1, 2005, and October 9, 2005. According to the ALJ, the applicable maximum rate for that period was not $966.08, but rather $1,073.64-200% of the national average weekly wage with respect to fiscal year 2006. The Benefits Review Board affirmed the ALJ's decision and his order denying reconsideration.

Roberts, 625 F.3d at 1205-06.

The Ninth Circuit framed and answered the issues before it as follows:

This case presents two questions regarding the interpretation of section 6(c) of the LHWCA. The first concerns when an employee is "newly awarded compensation." According to Roberts, the ALJ erred by holding that he was "newly awarded compensation" in fiscal year 2002, when he first became disabled. Roberts argues that he was not "newly awarded compensation" until fiscal year 2007, when the ALJ issued his decision making a formal award of compensation, and that therefore the ALJ should have used the national average weekly wage with respect to fiscal year 2007 in calculating the maximum rate that governs his compensation for temporary total and permanent partial disability. We disagree.

Id. at 1206.

The Ninth Circuit pointed out that the terms "award" and "awarded" are not expressly defined in the LHWCA. Id. Citing Astrue v. Ratliff, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010), the Ninth Circuit noted that the Supreme Court held in that case that "[t]he transitive verb 'award' has a settled meaning in the litigation context: It means '[t]o give or assign by sentence or judicial determination.'" Roberts, 625 F.3d at 1206 (alterations in original) (quoting 130 S. Ct. 2521, 2526 (2010) (quoting Black's Law Dictionary 125 (5th ed. 1979))).

The Ninth Circuit further observed that some sections of the LHWCA use the term "award" consistently with this settled meaning, but others do not. Roberts, 625 F.3d at 1206. The court in Roberts then focused on §§ 908 and 910 of the Act.

31

As to § 908, the Ninth Circuit concluded that Congress could not mean the term "award" or "awarded" to have in that section the meaning assigned to it in Ratliff or Black's Law Dictionary, that is, "assigned by formal order in the course of adjudication," because:

> [E]mployers are obligated to pay such compensation regardless of whether an employee files an administrative claim. Section 908 thus uses the terms "award" and "awarded" to refer to an employee's entitlement to compensation under the Act generally, separate and apart from any formal order of compensation.

Id. at 1206-07.

As to § 910, the Ninth Circuit similarly concluded that "[s]ection 10 . . . uses the term 'awarded' to refer to an employee's entitlement to compensation, irrespective of a formal compensation order. . . . [Thus,] Congress apparently used 'awarded compensation' and 'entitled to compensation' to mean the same thing." Roberts, 625 F.3d at 1207.

Finally, the Ninth Circuit determined that:

> Section 6 [§ 906] uses "awarded" like sections 8 [§ 908] and 10 [§ 910]. Like sections 8 and 10, section 6 governs determinations of compensation under the Act. Like sections 8 and 10, moreover, compensation governed by § 906 is due without a formal compensation order. See id. §§ 904(a), 914(a). Thus, "awarded" as used in section 6 does not mean "assigned by formal order in the course of adjudication." Consistent with the meaning of "awarded" in sections 8 and 10, "newly awarded compensation" in section 6 means "newly entitled to compensation."

32

Roberts, 625 F.3d at 1207.

We find that our sister circuit, perhaps because it applies Chevron deference to the Director's litigating positions,[13] has made too much out of too little. The LHWCA unequivocally was adopted to provide a federal traditional workers' compensation scheme for non-seaman maritime workers commonly known as "longshoremen, [that is,] land-based workers who perform a variety of tasks for, on, and around vessels." Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 7-1, at 533-34 (5th ed. 2011). The fact that various sections interrelate on the issue of how and when compensation is due to such workers does not override the clear and express language of § 906. The Ninth Circuit either has forgotten, or disagrees, that "if the plain meaning rule is a canon of construction, it is the largest caliber canon of them all." CBS, 245 F.3d at 1225 n.6.

Further, the Ninth Circuit, in attempting to avoid what it considers to be potential inequitable results, substituted what it thinks Congress should have said for the plain language that Congress used. This Court's binding law dictates otherwise. See id. at 1225 ("Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.'").

_____

[13] See supra notes 7, 12.

Additionally, in Roberts the Ninth Circuit construed the term "award" to mean (in §§ 906, 908, and 910) "entitled to compensation," which the court admitted is not the ordinary and common meaning ascribed to that term, yet allowed the same term to have its ordinary and common meaning in other sections of the LHWCA. We are not inclined to engage in such a contorted construction of the term "award."

The LHWCA discusses the review of "any action, award, order, or decision." 33 U.S.C. § 928(c). These terms designate administrative action, not rights or obligations that automatically arise upon the occurrence of certain events. The use of "award" in §§ 913 and 914 is similarly incompatible with an interpretation of "award" as meaning, as found by the district court and Roberts and as urged by the Director, DynCorp, and DynCorp's insurer, "entitlement," because §§ 913 and 914 anticipate the payment of compensation by an employer without entry of an award. Section 913 provides that a claimant must file a claim within one year of the injury but "[i]f payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment." 33 U.S.C. § 913(a). Section 914 provides that an employer must pay an injured employee promptly and "without an award" unless liability is contested. 33 U.S.C. § 914(a). Section 914 also

34

provides for assessment of a 10 percent penalty when an employer fails to provide "compensation payable without an award,"[14] 33 U.S.C. § 914(e), and a 20 percent penalty when an employer fails to provide "compensation[] payable under the terms of an award[.]"  33 U.S.C. § 914(f).  The LHWCA also treats an "award" as something provided by an administrative order, as opposed to automatically arising, when it discusses the filing of "[t]he order rejecting the claim or making the award (referred to in this chapter as a compensation order)."  33 U.S.C. § 919(e).  Similarly, another section provides that "[a]n award of compensation for disability may be made after the death of an injured employee."  33 U.S.C. § 919(f); see also 33 U.S.C. § 928(b) (discussing payment of attorney's fees when "the employer or carrier pays or tenders payment of compensation without an award").

Further, the legislative history of the Act also suggests that "newly awarded" does not mean mere entitlement to compensation.  Senate Report 92-1125 to Pub. L. No.92-576 clarified that "determinations of national average weekly wage made with respect to a period apply to employees or survivors currently receiving compensation . . . as well as those who begin receiving

_____

[14]  That is, compensation when the employer has not contested liability, as provided in 33 U.S.C. § 914(a).

compensation for the first time during the period." Dir., Office of Workers'

Comp. Programs v. Rasmussen, 440 U.S. 29, 42-43, 99 S. Ct. 903, 911, 59 L. Ed.

2d 122, 133 (1979) (emphasis omitted) (quoting S. Rep. No. 92-1125, at 18

(1972)) (internal quotation marks omitted).

The Roberts decision also is inconsistent with the Supreme Court's holding

in Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 112 S. Ct. 2589, 120 L.

Ed. 2d 379 (1992), in which the Supreme Court specifically rejected the converse

of the argument relied on in Roberts — that "person entitled to compensation"

could be read to encompass only claimants receiving compensation or having an

award of compensation at the relevant time. See Cowart, 505 U.S. at 475, 112 S.

Ct. at 2594, 120 L. Ed. 2d at 389 ("Cowart claims that he is not subject to the

approval requirement because in his view the phrase 'person entitled to

compensation,' . . . limits the reach of § 33(g)(1) to injured workers who are either

already receiving compensation payments from their employer, or in whose favor

an award of compensation has been entered."). As pointed out by Boroski, Cowart

affirmed that § 933(g) of the LHWCA, as amended by the same 1972 amendment

as the provisions involved here, provides that a "person entitled to compensation"

who enters into a settlement with a liable third party without first obtaining the

employer's approval forfeits the right to compensation and medical benefits from

36

the employer.  See id. at 475, 112 S. Ct. at 2594, 120 L. Ed. 2d at 389 ("We agree . . . and hold that under the plain language of § 33(g), Cowart forfeited his right to further LHWCA benefits by failing to obtain the written approval . . . prior to settling . . . .").

The Director and the Benefits Review Board considered the consequences of applying the statutory terms according to their natural meaning, thereby including unpaid claimants, anomalous and unduly harsh, and therefore had construed "entitled to compensation" to mean "receiving compensation or having been awarded it."  The Ninth Circuit and the Fifth Circuit had agreed in unpublished opinions with this contorted construction, id. at 488-89, 112 S. Ct. at 2601, 120 L. Ed. 2d at 397, but a panel of the Fifth Circuit followed by a divided Fifth Circuit sitting en banc subsequently held that the unambiguous meaning of the phrase employed by Congress controlled and therefore foreclosed this paid-or-awarded reading, id. at 491, 112 S. Ct. at 2602, 120 L. Ed. 2d at 399.  The Supreme Court agreed.  "Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated.  It means only that the person satisfies the prerequisites attached to the right."  Id. at 477, 112 S. Ct. at 2595, 120 L. Ed. 2d at 390.

The Supreme Court held that the forfeiture provision applied unambiguously to a claimant who did have a right to compensation under the Act when he settled a third-party tort claim, even though the employer was denying such entitlement, and no award had been entered or payments made, at the time. Id. at 475, 112 S. Ct. at 2594, 120 L. Ed. 2d at 389. "[T]he stark and troubling possibility" that the statute would have harsh results, "creat[ing] a trap for the unwary" and providing a tool for employers to avoid liability for disabling injuries suffered in their employ, id. at 483, 112 S. Ct. at 2598, 120 L. Ed. 2d at 394, was an insufficient ground for avoidance of its clear terms, as the Supreme Court concluded:

> It is the duty of the courts to enforce the judgment of the Legislature, however much we might question its wisdom or fairness. Often we have urged the Congress to speak with greater clarity, and in this statute it has done so. If the effects of the law are to be alleviated, that is within the province of the Legislature. It is Congress that has the authority to change the statute, not the courts.

Id., 505 U.S. at 483-84, 112 S. Ct. at 2598, 120 L. Ed. 2d at 394.

By a parity of reasoning, the normal meaning of "those newly awarded compensation" requires more than that the claimant qualifies for compensation, i.e., is entitled to it. Just as "entitled to compensation" cannot be read to mean "awarded or receiving compensation," Cowart, 505 U.S. at 475, 112 S. Ct. at

38

2594, 120 L. Ed. 2d at 389, "newly awarded compensation" cannot be read as "newly entitled to" compensation.

Further, application of the clear meaning of the statutory terms in this case will not have any harsher effect than construing it as the Ninth Circuit did in Roberts; it will simply favor the disabled employee over the employer, rather than the employer over the employee, in the event of significant delay. Following the statute as written will provide a claimant with a higher benefit, at a concomitant cost to the employer, if entry of an award is substantially delayed. Adopting the Roberts construction would result in a lower benefit, at a concomitant gain to the employer, if entry of an award is substantially delayed. The fact that Congress has chosen to encourage employers to pay promptly by imposing penalties for non-payment of claims that result in awards unless a claim is timely controverted does not make the disabled employee whole, since controversion is totally within the control and discretion of the employer. We therefore decline to follow the Ninth Circuit's decision to substitute the meaning of the terms "award" and "awarded" as used in §§ 908 and 910 in lieu of the plain meaning of the term as used in § 906(c).

The Director also contends that Boroski cannot obtain additional compensation even if "award" refers to an administrative order because the term

"during such period" in § 906(c) can be read to mean "for such period" and Boroski was awarded compensation "for" 2002-2008.  This argument fails because "during" is best understood to have a meaning more consistent with "in" than "for."  "During" means "enduring, lasting, continuing" and also "[t]hroughout the whole continuance of; hence, in the course of, in the time of."  Oxford English Dictionary 1134 (2d ed. 1989).  The Director cites Black's Law Dictionary for the proposition that "during" is a meaning of "for," but this citation is misleading.  The full entry for the cited definition of "for" is "[d]uring; throughout; for the period of, as where a notice is required to be published 'for' a certain number of weeks or months."  Black's Law Dictionary 644 (6th ed. 1990).  The Director then notes that § 908 provides in several places that compensation shall be paid "during the continuance" of a disability.  The Director contends that "during" must be read to mean "for" because compensation may be paid after a disability ends when liability was disputed.  However, the Director's argument ignores the significance of the object of the word "during."  Section 906 says that a determination of the national average weekly wage for a period is applicable to "those newly awarded compensation during such period."  The object of "during" is the period in which a claimant was "newly awarded compensation," not the period in which a claimant suffered an injury that gave him a claim for compensation.

40

## V.  CONCLUSION

A plain reading of subsections 906(b) and (c) compels our holding that a person, such as Boroski, who has never received compensation for a covered disability that commenced in 2002, and who is "newly awarded compensation" in 2008, is entitled to have his maximum compensation rate determined by reference to the national average weekly rate applicable to the date on which he received his award.  Because the parties stipulated, and the ALJ agreed, that Boroski's "average weekly wage" was at all relevant times "the maximum average weekly wage," his benefits should have been computed at the maximum average weekly rate in effect in 2008 — the year of his award — for each of the years spanning the 2002 - 2008 time period.

For the foregoing reasons, we **REVERSE** the district court's order entered December 3, 2010, affirming the Benefits Review Board's January 30, 2009, decision with respect to the finding that Boroski was compensated at the proper maximum rate and **REMAND** to the district court for further proceedings consistent with this opinion.